THE STATE, EX REL. BUSH ET AL., APPELLEES AND CROSS-APPELLANTS,
*v.* SPURLOCK ET AL., APPELLANTS AND CROSS-APPELLEES.

[Cite as *State, ex rel. Bush, v. Spurlock* (1992), 63 Ohio St.3d 453.]

454

*Rishel, Myers & Kopech* and *David E. Northrop,* for appellees and cross-appellants.

*Wood & Lamping, Paul R. Berninger* and *Mark R. Fitch,* for appellants and cross-appellees.

---

*Per Curiam.* When a classified civil service employee has been unlawfully excluded from public employment, a writ of mandamus may issue to order payment of compensation lost during the wrongful exclusion. *State, ex rel. Crockett, v. Robinson* (1981), 67 Ohio St.2d 363, 21 O.O.3d 228, 423 N.E.2d 1099; *State, ex rel. Martin, v. Columbus* (1979), 58 Ohio St.2d 261, 12 O.O.3d 268, 389 N.E.2d 1123, paragraph one of the syllabus; *Monaghan v. Richley* (1972), 32 Ohio St.2d 190, 61 O.O.2d 425, 291 N.E.2d 462, syllabus. The writ is available because the employee is entitled, by virtue of his or her classified status, to be paid the salary he or she would have received for the exclusion period, providing the amount is established with certainty, and the employee has no adequate remedy in the ordinary course of law to secure such payment. See *Crockett, supra,* at 365, 21 O.O.2d at 230, 423 N.E.2d at 1101; *Monaghan, supra,* at 195, 61 O.O.2d at 428, 291 N.E.2d at 465.

The court of appeals found that appellees had been wrongfully excluded from their employment by declaring the common pleas judgment *res judicata* on this issue. The court thus allowed back wages and longevity pay in stipulated amounts. The court did not allow stipulated losses for the pertinent salary cuts, however, because the cuts occurred after the three appellees were reinstated to their former positions, and the reductions in pay could be appealed to the NCSC pursuant to R.C. 124.34. Appellants challenge the application of *res judicata* and, in their cross-appeal, appellees challenge the denial of relief to compensate for the salary cuts. Appellants also assert that the common pleas court's failure to make a monetary award prevented the court of appeals from finding a legal duty to reimburse appellees.

Thus, this case presents three issues for our review: (1) Is a common pleas court judgment disaffirming certain layoffs and demotions conclusive of the illegality of these job actions? (2) Do appellants have a clear legal duty to reimburse appellees for the salary lost during the layoffs and demotions even though the common pleas court did not make a monetary award? and (3) Did the court of appeals err by denying a writ of mandamus to remedy the post-reinstatement pay reductions? For the reasons that follow, we hold, as the court of appeals did, that the common pleas judgment is conclusive by application of *res judicata,* that a duty to pay lost wages exists when civil service employees are wrongfully excluded from public employment, notwithstanding the absence of a specific order to make such payment, and that a writ of mandamus could not issue to correct the pertinent salary cuts due to the availability of an adequate remedy. Accordingly, we affirm.

*Res Judicata*

The court of appeals held that the common pleas court's prior reversal of the NCSC order was *res judicata* and precluded relitigation of the legality of appellees' layoffs and demotions because (1) the parties in this action, except for Bush,[3] were parties in the appeal of the NCSC order, (2) the legality of these job actions was necessarily and finally determined by the common pleas court in that appeal, and (3) the appeal afforded a full and fair opportunity to litigate the matter. See *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 2 OBR 732, 443 N.E.2d 978. We agree.

*Res judicata* refers to the principle that:

"A final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue as to the parties and their privies * * *." *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10, paragraph one of the syllabus.

In reviewing the NCSC order, the common pleas court held:

"The NCSC order was unsupported by the preponderance of substantial, reliable and probative evidence on the whole record. There was no evidence whatsoever in the record to justify the NCSC order which states:

"['] * * * where an employee is temporarily laid off by the Norwood School Board in the interest of economy and for the sole reason of lack of sufficient funds, the layoff by order of seniority within the job classification as was done in this instance is justified.[']

"No evidence supported the conclusion that the layoffs were [in] the interest of economy, no evidence supported the conclusion that there was a lack of sufficient funds, no evidence supported the fact that the layoffs were temporary. There was no evidence that the layoffs were within the job classification, as no classification plan existed. The layoffs were substantially defective and not in accordance with law."

Moreover, in a later "final entry" of February 27, 1987, the common pleas court stated:

"This matter is before the Court on an appeal from the order of the Norwood Civil Service Commission pursuant to R.C. Chapter 2506. For the reasons set out in the Court's findings of fact and conclusions of law filed herein on December 2, 1986, we find that the order of the Norwood Civil

---

3. Although Bush was not a party to the common pleas court proceeding, the court of appeals extended the common pleas judgment to him. Appellants do not assert this extension as error, and, accordingly, we express no opinion on this part of the judgment below.

Service Commission is contrary to law and unsupported by the preponderance of substantial, reliable and probative evidence on the whole record. Accordingly, that order is hereby reversed and vacated.

"* * *

"Costs are assessed against defendants-appellees. This Entry adjudicates all claims and the rights and liabilities of all the parties."

Appellants argue that the common pleas court did not render a judgment on the merits; however, these entries plainly establish that the court found the layoffs and related demotions of July 1981 to be unlawful, which was the ultimate issue in the appeal of the NCSC order. Appellants also contend that the common pleas court "was merely correcting a defect of procedure," which they assert to be the NCSC's grant of "summary judgment" in their favor. Appellants provide no justification for this conclusion, and we see nothing in the record that supports it. Thus, we concur with the court of appeals' finding that the common pleas court's judgment finally and necessarily resolved the validity of the July 1981 job actions.

Appellants further argue that they did not have an opportunity to present evidence before the common pleas court. The common pleas court record is not before us, but the parties agree that it contained no evidence about the reason for appellees' layoffs and demotions. This lack of evidence, however, is in no way due to the common pleas court proceedings. The common pleas court judge specifically advised the parties to the appeal by letter that the record in the case contained arguments, but no evidence other than layoff notices, and he accordingly offered to set the matter for hearing, per R.C. 2506.03. Appellants did not accept this offer or submit further evidence, even though they had the burden of proof to show why the layoffs and demotions were needed. *State, ex rel. Potten, v. Kuth* (1980), 61 Ohio St.2d 321, 324–325, 15 O.O.3d 391, 394, 401 N.E.2d 929, 932.

Based on the foregoing, the common pleas court determined the appeal of the NCSC order on substantive grounds after allowing appellants an opportunity to be heard. Appellants did not appeal. Where no appeal is taken from an order validly made in a civil service appeal, the order is conclusive of employee rights. *State, ex rel. Jones, v. Ward* (1964), 177 Ohio St. 89, 91, 29 O.O.2d 232, 202 N.E.2d 620, 622; *State, ex rel. Bingham, v. Riley* (1966), 6 Ohio St.2d 263, 35 O.O.2d 424, 217 N.E.2d 874; and *State, ex rel. Stough, v. Norton City School Dist. Bd. of Edn.* (1977), 50 Ohio St.2d 47, 48, 4 O.O.3d 116, 117, 362 N.E.2d 266, 268, overruled on other grounds, *Ohio Assn. of Pub. School Emp., Chapter No. 471 v. Twinsburg* (1988), 36 Ohio St.3d 180, 522 N.E.2d 532. Accordingly, the court of appeals correctly held that appellants

are bound by the unappealed common pleas court judgment as against the parties to the appeal of the NCSC order.

## Legal Duty

In its December 2, 1986 entry, the common pleas court awarded appellees other than Bush "compensat[ion] for their lost wages mitigated by amounts otherwise earned and/or received as unemployment compensation." Later, however, the court expressly deleted this award from its "final entry" of February 27, 1987. Apparently, the common pleas court was persuaded after its initial judgment that it had authority under R.C. 2506.04 only to affirm, reverse, vacate or modify the NCSC order and could not award back pay.

Appellants argue that the deletion of back pay language prevents appellees from establishing a duty to pay lost wages, apparently on the theory that mandamus may be used to compel wages for classified public employees only as a means to enforce a court or agency order. Indeed, we have issued writs of mandamus to compel compliance with orders for a classified employee's reinstatement or reclassification. See *Stough, Bingham,* and *Jones, supra.*

As mentioned, however, we have also recognized a duty to provide civil service salary to employees wrongfully excluded from positions in the classified service, and we have employed mandamus to compel compliance with the civil service laws. *Monaghan, supra,* at syllabus; *Martin, supra,* paragraph one of the syllabus. In *State, ex rel. Colangelo, v. McFaul* (1980), 62 Ohio St.2d 200, 16 O.O.3d 239, 404 N.E.2d 745, we specifically held that a reinstated classified public employee may pursue an action in mandamus to recover compensation due her for the period of time during which she was wrongfully excluded from her employment, irrespective of whether such compensation was ordered by the agency that disaffirmed her removal.

Moreover, in *Crockett, supra,* 67 Ohio St.2d at 366, 21 O.O.3d at 230, 423 N.E.2d at 1102, we relied on a stipulation that an employee was in the classified service to conclude that the public employer had a legal duty to compensate the employee pursuant to the above-cited cases. See, also, *State, ex rel. Gingrich, v. Fairfield City Bd. of Edn.* (1985), 18 Ohio St.3d 244, 245, 18 OBR 300, 301, 480 N.E.2d 485, 486 (claim by public employee of entitlement to wages or benefits that are granted by statute or ordinance is actionable in mandamus); *State, ex rel. Pennington, v. Ross* (1980), 63 Ohio St.2d 58, 17 O.O.3d 36, 407 N.E.2d 7, and *State, ex rel. Zone, v. Cleveland* (1986), 23 Ohio St.3d 1, 23 OBR 1, 490 N.E.2d 600 (mandamus does not lie to compel benefits conferred by civil service laws unless employee was appointed to civil service).

Here, a stipulation establishes that appellees are in the classified civil service, and the common pleas judgment reversing the NCSC order establish-

es the wrongfulness of the job actions taken in July 1981. Furthermore, the stipulated back pay and longevity pay lost by appellees satisfies the requirement that this amount be "established with certainty." *Monaghan, supra; State, ex rel. Fenske, v. McGovern* (1984), 11 Ohio St.3d 129, 131, 11 OBR 426, 428, 464 N.E.2d 525, 528. Thus, appellants have a clear legal duty to pay lost wages, and the court of appeals correctly so held.

### Post-reinstatement Pay Decrease

In their cross-appeal, three appellees claim that the court of appeals erred by refusing a writ of mandamus to correct the pay decreases imposed upon their reinstatement. They argue, based on stipulations that the pay decreases were caused by the July 1981 layoff, that the differences in salary are recoverable as compensation they " 'would have received had * * * [they] not been wrongfully excluded from * * * [their] employment * * *.' " *Crockett, supra,* 67 Ohio St.2d at 366, 21 O.O.3d at 231, 423 N.E.2d at 1102, quoting *Monaghan, supra,* 32 Ohio St.2d at 195, 61 O.O.2d at 428, 291 N.E.2d at 465.

The court of appeals also cited *Crockett,* but its holding resulted more from the back pay standard established in *Monaghan, supra,* at syllabus. Specifically, the court determined that these employees could recover compensation due them only "for the period of time during which * * * [they were] wrongfully excluded from * * * [their] employment," *id.,* and that this limitation necessarily prevented any recovery for post-reinstatement salary disputes. Moreover, the court observed that the pay decreases were not the subject of the appeal of the NCSC order and, therefore, concluded that these appellees had an adequate remedy to challenge the salary cuts by way of R.C. 124.34 (appeal to civil service commission for reductions in pay).

Appellees maintain that the standard employed by the court of appeals was too strict and that a "causal connection" between the unlawful exclusion and the lost pay is enough for a writ of mandamus to issue. We, however, share the view that a public employee is entitled under *Monaghan* to no more in back pay than the amount of the employee's salary accrued during the period of unlawful exclusion from public employment. Again, *Monaghan* stands for the proposition that an employee has no adequate remedy at law to compel payment of back wages lost during an unlawful exclusion from public employment and that a writ of mandamus is therefore available to enforce the civil service laws. We see nothing in that case or any other cited by appellees to suggest that the same rule applies when employees are reinstated at wages lower than they previously enjoyed. Thus, employees suffering such a loss must affirmatively show the absence of an adequate remedy in the ordinary course of law for a writ of mandamus to issue. R.C. 2731.05.

Appellees have not satisfied this prerequisite. They argue only that the pay decreases were the result of erroneously assigned wage rates rather than wage reductions and that, therefore, there was no separate adverse job action appealable to the NCSC under R.C. 124.34. R.C. 124.34, however, does not distinguish between inadvertent and intentional reductions in pay. Thus, the court of appeals' decision to deny a writ of mandamus to rectify the pertinent pay cuts was also correct.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.